## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **13-30080** |
| | ) | |
| **ERIC M. ANDREWS, JOEL C.** | ) | |
| **ANDREWS, and MICHAEL R.** | ) | |
| **KEEBLER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court are the Motion to Dismiss Count 1 of the Indictment (d/e 47) and the Supplemental Motion to Dismiss Counts 2–11 of the Indictment (d/e 54) filed by Defendant Joel C. Andrews, as well as the Motion to Dismiss Count 1 of the Indictment (d/e 51) and the Motion to Dismiss Counts 2–11 of the Grand Jury Indictment (d/e 63) filed by Defendant Eric M. Andrews. Both Defendants contend that their prosecution on Count 1 is barred by a five-year statute of limitations. Both Defendants further contend that their prosecution on Counts 2–11 is also barred by a five-year statute of limitations, and that they

cannot be held criminally liable for the actions of other alleged co-conspirators that were not reasonably foreseeable to them. Assuming the facts alleged in the Indictment are true for purposes of resolving the present motions to dismiss, questions of fact remain for a jury to resolve as to whether Joel C. Andrews or Eric M. Andrews effectively withdrew from the conspiracy charged according to federal law. For this reason, and because the Government has adequately pleaded overt acts in furtherance of the conspiracy that fall within the five-year limit of the statute of limitations, all four motions to dismiss must be DENIED.

## I. BACKGROUND

The Government alleges that the Defendants participated in a conspiracy to defraud the Illinois Environmental Protection Agency (IEPA) of money from a fund to clean up "Leaking Underground Storage Tanks" (the LUST fund). The scheme was complex, but in summary, Defendants allegedly perpetrated the fraud through their management and control of at least two business entities, Environmental Management, Inc. (EMI), and Environmental Control Systems, LLC (ECS), in five different ways: (1) by submitting claims for clean-up activities that were not actually done; (2) by submitting

claims for clean-up activities that overstated the work done by falsifying innocent sub-contractors' invoices; (3) by creating false invoices through shell companies the conspirators controlled; (4) by creating false competing bids for sub-contracted work through the shell companies or through a single, complicit sub-contractor; and (5) by convincing complicit sub-contractors to submit invoices in excess of the payments the sub-contractors would privately agree to accept from the conspirators.

As alleged by the Government, the timeline of the conspiracy is as follows:

- Joel C. Andrews was President of Environmental Management, Inc., (EMI) from 1997 until September 30, 2006.

- Eric M. Andrews was Vice-President of EMI from September 1999 to September 30, 2006.

- Co-Defendant Michael R. Keebler joined EMI as a licensed professional engineer in April 2001 and became an officer of EMI in 2003.

- In January 2003, Joel C. Andrews, Eric M. Andrews, and Michael R. Keebler established a limited liability company, Environmental Control Systems, LLC (ECS).  Though

nominally independent from EMI, ECS was a "straw corporation," the Government alleges, whose sole purpose was to endorse exaggerated invoices or to exaggerate work done by sub-contractors by creating falsified invoices with inflated billings for EMI to use in its submissions for LUST fund reimbursements. (<u>See</u> Gov't's Resp. Mot. Dismiss, d/e 52, at 7–9.)

- On September 30, 2006, both Joel C. Andrews and Eric M. Andrews sold their ownership interest in EMI to Keebler and resigned as directors and officers of EMI. Joel C. Andrews and Eric M. Andrews assert that this is the last date of their involvement in the alleged fraudulent scheme and, as such, the five-year statute of limitations for their prosecution had run by the time the Indictment was filed in October 2013.

- Under the terms of the sale agreement, both Joel C. Andrews and Eric M. Andrews were to continue to receive salaries through September 2008 and payments for the balance owed on their ownership interests through October 2010.

- In March 2009, Joel C. Andrews allegedly distributed proceeds from the alleged fraudulent scheme from ECS to himself and his co-conspirators.

- The Government alleges further that a review of EMI's QuickBooks financial records reveals child support payments made on behalf of both Joel C. Andrews and Eric M. Andrews through at least May 2011, demonstrating both Defendants' ongoing involvement with EMI.

## II.   ANALYSIS

Joel C. Andrews and Eric M. Andrews assert that the charge of Conspiracy to Commit Mail Fraud in Count 1 should be dropped as to each of them because each of them effectively withdrew from the alleged conspiracy on September 30, 2006, when they both sold all their stock interest in Environmental Management, Inc. (EMI), resigned as directors and officers of EMI, and "discontinued involvement with EMI." (See Def. Joel C. Andrews's Mot. Dismiss Count 1 Indictment, d/e 47 at 3–4 [hereinafter J. Andrews Mot. Dismiss Count 1]; Def. Eric M. Andrews's Mot. Dismiss Count 1 Grand Jury Indictment, d/e 51 at 2–3 [hereinafter E. Andrews Mot. Dismiss Count 1].)  Because these actions of purported withdrawal

occurred more than five years before the Government issued the Indictment on October 9, 2013, and filed the Indictment on October 10, 2013, Defendants argue that the statute of limitations bars their prosecution. The Government argues that Defendants' respective withdrawals were not effective both because the withdrawals were insufficient under the law and because at least one additional overt act in furtherance of the conspiracy—Joel C. Andrews's distribution of the proceeds accumulated through the fraudulent scheme, and all three Defendants' depositing of those proceeds into personal bank accounts—occurred on or about March 16, 2009, a date falling within the five-year statute of limitations. (See Indictment, d/e 1 at 12 ¶ 22.)

In his Supplemental Motion to Dismiss Counts 2–11 of the Indictment, Defendant Joel C. Andrews asserts that Counts 2 through 11 are barred by the statute of limitations because of his withdrawal from the conspiracy in September 2006. Joel C. Andrews further asserts that no factual basis alleged in Counts 8 through 11 implicates Joel C. Andrews. Defendant Eric M. Andrews, in his Motion to Dismiss Counts 2–11, adopts the statute-of-limitations arguments asserted by Joel C. Andrews and further

asserts that not all charges in the Indictment allege Eric M. Andrews's personal involvement.  The Government responds that the substantive offenses as alleged in Counts 2 through 11 occurred within the five-year statute of limitations time period and that  Joel C. Andrews and Eric M. Andrews may be held criminally liable for all charged offenses under the <u>Pinkerton</u> doctrine, which holds defendants criminally liable for the substantive crimes of their co-conspirators so long as the conduct of the substantive crimes was in furtherance of the conspiracy and reasonably foreseeable to the defendant.  <u>See</u> <u>Pinkerton v. United States</u>, 328 U.S. 640 (1946); <u>United States v. Henderson</u>, 58 F.3d 1145 (7th Cir. 1995).

**A.  Factual questions remain for a jury to resolve as to whether either Joel C. Andrews or Eric M. Andrews effectively withdrew from the conspiracy.**

Factual questions remain for a jury to resolve as to whether either Joel C. Andrews or Eric M. Andrews took sufficient actions to effectively withdraw from the conspiracy.  Withdrawal from a criminal conspiracy is a question of fact on which the defendant carries the burden of proof.  <u>Smith v. United States</u>, --- U.S. ---, 133 S. Ct. 714, 719 (2013) (holding that allocating the burden of proof on withdrawal from conspiracy to defendant does not violate Due

Process Clause).  Because withdrawal is a factual question for the jury, withdrawal is not properly determined as a matter of law by the Court at the stage of a defendant's motion to dismiss.

Moreover, withdrawal from a conspiracy requires that a person take affirmative action to disavow or defeat the purpose of the conspiratorial scheme; simply ceasing to participate does not end a defendant's criminal liability.  See United States v. Schiro, 679 F.3d 521, 528 (7th Cir. 2012).  Neither retirement from an organization nor mere inactivity is sufficient to effectuate legally sufficient withdrawal.  See United States v. Morales, 655 F.3d 608, 640 (7th Cir. 2011) ("retirement" from a street gang was not "withdrawal" from conspiracy without notifying authorities or other affirmative act to disavow criminal objectives); United States v. Hargrove, 508 F.3d 445, 449 (7th Cir. 2007) (retirement and relocating were not enough to withdraw from conspiracy without affirmative steps to "defeat or disavow the conspiracy's purpose").  Examples of actions for legally effective withdrawal include confessing to authorities and clearly communicating to co-conspirators one's disavowal of the conspiracy and its criminal objectives.  United States v. Emerson, 501 F.3d 804, 811 (7th Cir. 2007).

Here, both Joel C. Andrews and Eric M. Andrews contend that their withdrawal from the alleged conspiracy was legally effective no later than September 30, 2006, when they each sold their ownership interest and resigned as directors and officers of EMI. But both Joel C. Andrews and Eric M. Andrews are alleged to have received proceeds from the conspiracy on March 16, 2009. Moreover, the Government has indicated it has evidence showing continued transactions between EMI and ECS into March 2009, which may have enabled Defendants to continue to receive profits from the alleged fraudulent scheme. Because the Indictment alleges that both Defendants continued to benefit from the fraudulent scheme and did nothing else to disavow the conspiracy's criminal objectives, the question of fact remains for a jury to determine whether either Defendant effectively withdrew from the conspiracy.

The factual question also remains whether either Andrews brother remained involved with ECS after they sold their ownership interest in and resigned as directors and officers of EMI. If ECS was established as a "straw corporation" for the purpose of endorsing exaggerated invoices and creating invoices with inflated billings for

EMI, as the Government alleges, then selling out and quitting at

EMI hardly seems to answer the question as to the withdrawal from

the conspiracy by Joel C. Andrews or Eric M. Andrews.  Because

each of these determinations turns on a question of fact suitable for

a jury to resolve, the issue of Defendants' withdrawal is not

appropriately decided as a matter of law by the Court at the stage of

Defendants' Motions to Dismiss.

**B.**      **Factual questions remain for a jury to resolve as to whether Joel C. Andrews distributed fraudulently obtained funds, and both Eric M. Andrews and Joel C. Andrews deposited fraudulently obtained funds, in March 2009, within the five-year statute of limitations.**

Factual questions also remain for a jury to resolve as to

whether, as the Government has alleged, Joel C. Andrews

distributed fraudulently obtained funds and both Defendants

deposited those funds in personal bank accounts on March 16,

2009, within the five-year statute of limitations.  Joel C. Andrews

and Eric M. Andrews contend that they no longer participated in

the conspiracy once they sold their shares in EMI and resigned as

directors and officers from EMI on September 30, 2006.  Generally,

however, a conspiracy exists until its main criminal objective has

been accomplished or abandoned.  United States v. Maloney, 71

F.3d 645, 659 (7th Cir. 1995). Where the object of a conspiracy is economic gain, the conspiracy "continues until the conspirators receive their anticipated economic benefits." United States v. LaSpina, 299 F.3d 165, 175 (2d Cir. 2002). Moreover, an overt act in furtherance of a conspiracy need not be itself a crime. United States v. Soy, 454 F.3d 766, 768 (7th Cir. 2006); see also Braverman v. United States, 317 U.S. 49, 53 (1942). Where a conspiracy maintains its continuity of purpose, the conspiracy is presumed to exist until there has been an affirmative showing that the conspiracy has been abandoned. See Maloney, 71 F.3d at 659; see also, e.g., United States v. Gajo, 290 F.3d 922, 928 (7th Cir. 2002) (holding that arson-for-profit scheme did not end with burning of building, but with realizing of profit, contemplating further continued actions).

Here, both Joel C. Andrews and Eric M. Andrews assert that the act of distributing and depositing proceeds from the alleged fraudulent scheme was not an act in furtherance of that scheme because the distribution of the proceeds "had nothing to do with the success of the [scheme]." Rather, Defendants insist, the alleged crime of the conspiracy was complete upon the submission of any

fraudulent invoices, or in the alternative, after the 120-day period during which time the IEPA was required to evaluate the reimbursement requests and render a final decision. But to accept this argument is to accept the premise that the criminal objective of the alleged conspiracy could be realized without any Defendant personally collecting the fraudulently obtained funds. Because the Indictment does, in fact, charge Defendants with a conspiracy whose purpose was to obtain money fraudulently for themselves, the act of distributing the money fraudulently obtained is an over act in furtherance of the conspiracy, even if disbursing money is not itself a criminal act. For the same reason, payments through October 2010 under the sale agreement for Defendants' ownership interests in EMI and EMI's alleged child support payments on Defendants' behalf through at least May 2011 may also be acts in furtherance of the conspiracy.

Moreover, the Government's burden to plead overt acts in an Indictment is not a demanding one. See, e.g., United States v. Meeker, 701 F.2d 685, 689 n.4 (7th Cir. 1983) (adopting the rule that "[o]vert acts need not be pleaded with the fullness that would be necessary if they were themselves charged as crimes"). In fact, a

jury may vote to convict on overt acts not even charged in the indictment.  United States v. Harris, 542 F.2d 1283, 1300 (7th Cir.1976) (affirming conviction for conspiracy to distribute narcotics predicated on hearsay evidence only admissible if conspiracy extended beyond date of overt acts charged in Indictment on grounds that jury may convict based on uncharged overt acts); see also United States v. Elizondo, 920 F.2d 1308, 1319 (7th Cir.1990) (affirming, under same rule, conviction on remaining count of conspiracy to distribute marijuana predicated on evidence supporting separate drug-transaction charge dismissed at close of Government's case in chief).  Accordingly, the conspiracy charged in Count 1 cannot be dismissed as a matter of law based on the Government's pleadings.  Rather, the existence of the conspiracy— and the criminal culpability for that conspiracy of Defendants Joel C. and Eric M. Andrews—turns instead on factual issues for a jury to decide.

**C.** **To the extent the conduct charged in Counts 2 through 11 was undertaken in furtherance of the alleged conspiracy, as determined by a jury, Joel C. Andrews and Eric M. Andrews may be found criminally liable for the substantive crimes charged in those Counts under the <u>Pinkerton</u> doctrine.**

Joel C. Andrews and Eric M. Andrews may be found criminally liable for the substantive crimes committed by their co-conspirators, as charged in Counts 2 through 11, under the <u>Pinkerton</u> doctrine.  Under <u>Pinkerton</u>, a defendant may be held criminally liable for the acts of his co-conspirators when these actions are undertaken in furtherance of the conspiracy and are reasonably foreseeable to the defendant.  <u>Pinkerton</u>, 328 U.S. 640; <u>see also</u> <u>Henderson</u>, 58 F.3d 1145.  <u>Pinkerton</u> liability can even extend to substantive offenses in which the defendant never participated and about which the defendant never knew.  <u>United States v. Pisman</u>, 443 F.3d 912, 913 (7th Cir. 1995).

Here, the Government agrees that a jury should not convict Joel C. Andrews and Eric M. Andrews for any act that was not reasonably foreseeable to them, but the Government maintains that this is a factual issue for the trier of fact.  Indeed, multiple factual issues exist concerning the scope and duration of the alleged

conspiracy, including whether Joel C. Andrews or Eric M. Andrews ever effectively withdrew from the conspiracy; whether the ECS disbursement of March 16, 2009, brought the conspiracy to an end; and whether the conspiracy continued in a new form after March 16, 2009, with Michael R. Keebler as the sole director at EMI while Joel C. Andrews and Eric M. Andrews continued their participation from outside of EMI.  At very least, the dates of the additional substantive charges in Count 2 (December 12, 2008), Count 3 (October 15, 2008), and Count 5 (December 12, 2008) occur before the disbursement date of March 16, 2009—just one of many dates a jury may determine marks the end of the alleged conspiracy. Additionally, Count 2 states directly and Counts 3 through 11 incorporate by reference the allegation that the fraudulent scheme existed from April 2001 to October 2013.  If a jury determines as a factual matter that the acts alleged in Counts 2 through 11 were all in furtherance of an ongoing conspiracy stretching into October 2013 and were foreseeable to Joel C. Andrews and Eric M. Andrews, they may be held liable under the <u>Pinkerton</u> doctrine for each substantive offense committed by their co-conspirators.

## III.  CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss

(d/e 47; d/e 51; d/e 54; d/e 63) are DENIED.

IT IS SO ORDERED.

ENTER:  January 29, 2015

FOR THE COURT:               s/ Sue E. Myerscough
                             SUE E. MYERSCOUGH
                        UNITED STATES DISTRICT JUDGE